IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2007 JAN 22  A 9:21

CLERK _L. LaVictoire_
SO. DIST. OF GA.

DAVID YOUNG,

    Plaintiff,

vs.

                                CIVIL ACTION NO.: CV605-104

JAMES E. DONALD; HUGH SMITH;
STEVE ROBERTS; JOHN W. PAUL;
STEVE DUPREE; ALBERT PORTER;
TOMMY L. JONES, and LISA WATERS,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Augusta State Medical Prison in Grovetown, Georgia, has filed a 42 U.S.C. § 1983 action, alleging that Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at Georgia State Prison ("GSP"). Plaintiff has filed a Motion for Summary Judgment (Doc. No. 60) and Defendants have filed a Response (Doc. No. 72). Defendants have also filed a Motion for Summary Judgment (Doc. No. 69) and Plaintiff has filed a Response (Doc. No. 77). For the reasons which follow, Plaintiff's and Defendants' Motions for Summary Judgment should be **DENIED**.

## STATEMENT OF THE CASE

Plaintiff alleges that officials at GSP exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff specifically asserts that officials at GSP have continuously allowed him to be exposed to environmental tobacco smoke ("ETS") and fire smoke, and that this exposure has aggravated his asthmatic

AO 72A
(Rev. 8/82)

condition. (Doc. No. 60, p. 1). Plaintiff contends that Defendants Jones and Waters, both medical providers at GSP, failed to ensure his placement in a smoke-free environment, despite his having a medical profile requiring as much. (Id. at 1-2). Plaintiff avers that each Defendant has been notified of his medical condition and his continued exposure to smoke, but neither has done anything to remedy the problem. (Id. at 2).

Defendants first contend that Plaintiff's claims are limited by the applicable statute of limitations. (Doc. No. 70, p. 13). Additionally, Defendants, both current and former employees of the Georgia Department of Corrections ("GDC"), assert that GDC Standard Operating Procedure prohibits smoking inside any GDC facility, including GSP. (Doc. No. 70, p. 2). Any inmate caught violating this rule, Defendants contend, is subject to disciplinary action. Defendants further contend that staff are not permitted to smoke indoors, and that at no time have they been aware of staff violating the smoking rules. (Id. at 2-3). Defendants allege that Plaintiff's Eighth Amendment claim fails on its merits. First, Defendants contend that Plaintiff cannot prove with objective evidence that he has been exposed to unreasonably high levels of ETS or that he has suffered an objectively serious injury. (Id. at 14-18). Second, Defendants contend that Plaintiff cannot show that they acted with subjective "deliberate indifference" to his needs. (Id. at 18-22). Finally, Defendants assert that Plaintiff's claims are improperly based upon a respondeat superior theory, and that they are also entitled to qualified immunity.[1]

---

[1] Defendants also assert that Defendant Harris should be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Defendant Harris was dismissed from this action by Order dated August 28, 2006. (Doc. No. 56).

## STANDARD OF DETERMINATION

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The procedure for disposing of a summary judgment motion is well established. The Court may grant summary judgment to a party when, after a reasonable time for discovery, the evidence demonstrates that the nonmoving party has failed to establish an essential element of his case. The party moving for summary judgment bears the initial burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, the Adickes Court explained that a court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion. All reasonable doubts regarding the facts should be resolved in favor of the non-movant. Adickes, 398 U.S. at 157, 90 S. Ct. at 1608.

Once the moving party has met this initial burden, the burden shifts to the opposing party to show that a genuine issue of material fact exists. Celotex Corp. v. Catrell, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The opposing party may not simply rest upon mere allegations or denials of the pleadings. Rather, the nonmoving party must make a sufficient showing of facts to establish the existence of an essential element to his case on which he will bear the burden of proof at trial. Id.; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989). To oppose the motion sufficiently after the movant has met his initial burden, the nonmoving party must point to evidence in the record or present additional evidence in the form of affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. Riley v. Newton, 94 F.3d 632, 639 (11th Cir.

1996). If the record presents factual issues, the Court must deny the motion and proceed to trial. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999). Summary judgment is also inappropriate where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Id.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Statute of Limitations**

Plaintiff filed this cause of action pursuant to 42 U.S.C.A. § 1983. Although 42 U.S.C.A. § 1983 does not provide a specific statute of limitations, courts are to apply the most appropriate and analogous state statute of limitations in these type of civil rights actions. Burnett v. Grattan, 468 U.S. 42, 49, 104 S. Ct. 2924, 2929, 82 L. Ed. 2d 36 (1984). The appropriate statute of limitations for this action, as determined by state law, is two years. Harding v. Straub, 490 U.S. 536, 538, 109 S. Ct. 1998, 2000, 104 L. Ed. 2d 582 (1989); O.C.G.A. § 9-3-33.

Defendants contend that Plaintiff's claims are limited by the statute of limitations. Defendants assert that Plaintiff may not prove damages for anything occurring prior to October 3, 2003, the date that is two years prior to the filing of this action, since two years is the governing limitations period and since there are no circumstances acting to toll the statute. However, Plaintiff's claims are in the nature of "continuing wrongs." Neel v. Rehberg, 577 F.2d 262, 264 (5th Cir. 1978) (refusal to provide medical treatment, shower, telephone, and visiting privileges to prisoner constitutes continuing wrong). Where a continuing wrong is involved, "the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." Donaldson v. O'Connor, 493 F.2d 507,

529 (5th Cir. 1974). Plaintiff's allegations, therefore, which pertain to his alleged mistreatment while at GSP and which allegedly began as early as February 20, 2003 and continued "even after the filing of [the] civil rights complaint," are not time-barred or limited by the statute of limitations.

## II. Eighth Amendment Claim

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of deliberate indifference to that need." Kelley v. Hicks, 400 F.3d 1282, 1284 (11 th Cir. 2005). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319-20 (11th Cir. 2005) (quoting Farmer v. Brennan, 511 U.S. at 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). The Supreme Court also has held that "a cause of action exists under the Eighth Amendment when a prisoner alleges that

officials have, with deliberate indifference, exposed him to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993). In keeping with the Eighth Amendment's objective and subjective requirements, Helling requires both exposure to unreasonably high levels of environmental tobacco smoke ("ETS") and actual or constructive knowledge of the exposure by prison officials. Id.

Defendants contend that Plaintiff fails to meet either the objective or subjective requirement of his deliberate indifference claim. First, Defendants assert that Plaintiff cannot show that he has been exposed to unreasonably high levels of ETS. Defendants contend that GDC Standard Operating Procedure prohibits smoking inside GDC facilities, and that this policy is enforced by prison officials. (Doc. No. 70, p. 15). Defendants present evidence that since August 2004, 46 disciplinary reports have been issued to prisoners caught smoking in restricted areas. (Id.). Defendants additionally offer evidence that they claim indicates that "the ventilation system at Georgia State Prison is excellent," with an airflow rate that keeps airborne pollutants out of the housing areas. (Id. at 15-16). Defendants assert that Plaintiff was housed in a "closed front cell" at GSP, which they claim exposes the inmate to fewer pollutants than an open front cell. (Id. at 16).

Defendants additionally contend that Plaintiff has suffered no objectively serious injury and has failed to show that ETS poses "an unreasonable risk of serious damage to his future health." (Doc. No. 70, p. 17 (quoting Oliver v. Deen, 77 F.3d 156, 159 (7th Cir. 1996)). Finally, Defendants allege that even if Plaintiff does exhibit an objectively serious injury, he cannot prove that ETS, and not some other irritant, was the cause of the injury. (Doc. No. 70, p. 17).

6

AO 72A
(Rev. 8/82)

With regard to the objective prong of his deliberate indifference claim, Plaintiff acknowledges that GDC has a smoking ban within its facilities. However, Plaintiff contends that the policy is poorly enforced. Plaintiff asserts that smoking in violation of the GDC policy is especially prevalent in the lockdown areas, where he was housed, since inmates on lockdown status are inside the building for twenty-three hours per day. Plaintiff asserts that despite the fact that inmates have only one hour of smoking time per day, they can purchase up to sixty cigarettes per week at the prison's commissary. (Doc. No. 61, p. 2). Plaintiff has submitted the affidavits of fellow inmates, who state that there is indeed one hour of smoking time per day, which is allegedly "often cancelled, forcing those who smoke tobacco products to smoke inside the dorms." (Pl.'s Exh. A). These affiants also claim that the correctional officers themselves smoke in the dormitories as well. (Id). Plaintiff also offers affidavits from inmates who are smokers themselves, and who assert that while housed in the lockdown area at GSP, they were never "issued a reprimand for smoking, nor told that it was illegal or written a disciplinary report for its infraction." (Pl.'s Exh. J). Plaintiff contends that many of the disciplinary reports that are issued for violation of the smoking policy are actually dismissed. (Doc. No. 60, p. 16; Pl.'s Exh. O). Regarding the adequacy of the ventilation system in the housing areas at GSP, Plaintiff contends that Defendants' tests of the airflow are unreliable, namely because when the tests were administered, the sale of tobacco products at the commissary was suspended. (Doc. No. 60, p. 17; Pl.'s Exh. M; Pl.'s Exh. N).

To show an "objectively serious injury," Plaintiff submits his own affidavit, along with his medical records from his time at GSP. Plaintiff asserts that he has been diagnosed as a severe asthmatic and has been treated with an oxygen machine and a nebulizer machine

AO 72A
(Rev. 8/82)

in addition to prescription medications. (Doc. No. 60, p. 14). Plaintiff contends that his condition is exacerbated by smoke fumes, and that his condition became notably worse when he was assigned and kept in the lockdown housing area of GSP. (Id.). Plaintiff has submitted numerous documents noting his various physicians' diagnoses of "severe asthma," with instructions that he be housed in a smoke free environment due to his condition. (Pl.'s Exh. C; Pl.'s Exh. D; Pl.'s Exh. H). Plaintiff has submitted seven health services request forms, dated between 2003 and 2006, all of which indicate that he requested treatment for asthmatic symptoms, often allegedly brought on by smoke inhalation. (Pl.'s Exh. H).

With regard to the subjective inquiry, Defendants contend that Plaintiff cannot show that prison officials were deliberately indifferent to his plight. Specifically, Defendants submit their affidavits, asserting that they had no reason to believe that the non-smoking policy at GSP was not being enforced. (Doc. No. 70, p. 18; Defs.' Exhs. B-I). Also, Defendants claim they did not have reason to believe that airflow in the housing units at GSP was inadequate. (Doc. No. 70, p. 18; Defs.' Exhs. B-J). Defendants contend that they "do not recall" being informed that Plaintiff needed to be transferred to a smoke-free environment, and that they generally have had no awareness of Plaintiff's having been exposed to any unreasonably high level of ETS at GSP. (Doc. No. 70, pp. 19-20).

Conversely, Plaintiff contends that each named Defendant was made aware of his exposure to high levels of ETS, and his need to be housed in a smoke-free environment because of his asthmatic condition. As to Defendant Donald, Plaintiff asserts that he filed several grievances with his department, wrote him a personal letter, and had his family speak to him over the phone. (Doc. No. 60, p. 8; Pl.'s Exh. B, p. 1; Pl.'s Exh. G; Pl.'s Exh.

K; Pl.'s Exh. V). As to Defendant Smith, Plaintiff alleges that he was also on notice of Plaintiff's plight. Plaintiff alleges that he filed several grievances on the subject, sent Smith a letter through GSP's in-house mail, and personally spoke with him about the matter. (Doc. No. 60, pp. 8-9; Pl.'s Exh. B, p. 4; Pl.'s Exh. G; Pl.'s Exh. K; Pl.'s Exh. P). Plaintiff asserts that Defendant Roberts, Defendant Paul, Defendant Dupree, and Defendant Porter were all also made aware of the situation through grievances, personal letters, and personal conversations with Plaintiff. (Doc. No. 60, pp. 9-10). Plaintiff asserts that he also sent letters to Defendants Jones and Waters, and spoke personally to both of them about his complaints during the course of his medical treatment. (Doc. No. 60, pp. 10-11). Furthermore, as outlined above, Plaintiff asserts that the non-smoking policy is poorly enforced at GSP, and that Defendants were on notice that inmates were smoking indoors despite the existence of a policy preventing such behavior.

Based on the record before this Court, neither party is entitled to summary judgment on Plaintiff's Eighth Amendment claim. Despite Defendants' contentions to the contrary, Plaintiff has created genuine issues of material fact as to whether he has been exposed to unreasonably high levels of ETS, and whether Defendants were indeed deliberately indifferent to this fact. Although Defendants have presented evidence in their favor in support of their motion for summary judgment, this Court must view that evidence in the light most favorable to Plaintiff. In doing so, it is clear that genuine issues of material fact preclude the grant of summary judgment to Plaintiff or Defendants.

### III.  Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1234. "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F. 3d 1176, 1185 n.17 (11th Cir. 1994). Once the government official has shown that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not warranted. Gonzalez, 325 F.3d at 1234.

The Supreme Court has established a two-part test to determine the applicability of qualified immunity. First, the court must determine whether plaintiff's allegations, taken as true, establish a constitutional violation. Hope, 536 U.S. at 736, 122 S. Ct. at 2513. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, the next step is to ask whether the right was one that was clearly established under the law. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. at 2156.

Defendants contend that they are entitled to qualified immunity because they acted within their discretionary authority and because they did not have "fair warning" that "housing Plaintiff in a prison that had excellent airflow and an enforced policy would violate

his constitutional rights." (Doc. No. 70, p. 24). Plaintiff asserts that it is, in fact, clearly established that a prisoner's constant exposure to ETS amounts to deliberate indifference in violation of the Eighth Amendment. (Doc. No. 77, p. 4, citing Helling v. McKinney, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)).

It is uncontroverted that Defendants, in taking the actions complained of, were acting within the scope of their discretionary authority. However, Defendants' assertion that they did not have "fair warning" is without merit. The Supreme Court has held that "a cause of action exists under the Eighth Amendment when a prisoner alleges that officials have, with deliberate indifference, exposed him to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed.2d 22 (1993). Helling requires both exposure to unreasonably high levels of environmental tobacco smoke ("ETS") and actual or constructive knowledge of the exposure by prison officials. Id. It would be inappropriate to grant summary judgment to Defendants based on qualified immunity principles because, as discussed above, Plaintiff has created a genuine issue of material fact as to whether Defendants' responses to Plaintiff's complaints about ETS were reasonable. At this stage of the litigation, the qualified immunity defense hinges on issues in need of a jury's resolution. Accordingly, Defendants should not be entitled to summary judgment on the basis of qualified immunity.

IV.   **Respondeat Superior**

In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Braddy v. Fla. Dep't of Labor and Employment Sec., 133 F.3d

AO 72A
(Rev. 8/82)

797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Id. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. Having actual notice of the alleged unconstitutional practices combined with a refusal to investigate or respond comprises such a causal connection.

Defendants contend that Plaintiff is attempting to hold Defendants Donald, Smith, Paul, Dupree, and Porter liable solely on the basis of respondeat superior, because there is no causal connection between the conduct of these Defendants and the alleged violations. Plaintiff contends that these Defendants personally participated in the alleged constitutional violation, insofar as he allegedly "personally informed each defendant verbally, in writing and through grievances, about his constant exposure to ETS and fire smoke which was exacerbating his severe asthma and was harmful to his health. Each Defendant failed to address or cure the on-going injury to Plaintiff." (Doc. No. 77, p. 3).

As stated, there are genuine issues of material fact as to whether Plaintiff was being exposed to unreasonable amounts of ETS and whether Defendants' reaction to Plaintiff's complaints exhibited a deliberate indifference to his medical conditions. Likewise, there is a genuine issue of material fact as to whether Defendants were aware of any widespread abuse of the prison's no-smoking indoors policy and failed to correct this abuse.

12


Accordingly, Plaintiff seeks to hold Defendants liable on more than a theory of respondeat superior.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Doc. No. 60) should be **DENIED**. Defendants' Motion for Summary Judgment (Doc. No. 69) should also be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 22nd day of January, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)